UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| DONALD KENT, | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Case No. 23-cv-01067 |
| | ) |
| TIMOTHY ADESANYA *et al.*, | ) |
|     Defendants. | ) |

## ORDER

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court for screening is a Complaint (Doc. 1) filed under 42 U.S.C § 1983 by Plaintiff Donald Kent, who resides in Valier, Illinois. Plaintiff has also filed a Motion for Counsel (Doc. 4).

I.    **Complaint**

    **A. Screening Standard**

The Court must "screen" Plaintiff's Complaint and dismiss any legally insufficient claim or the entire action if warranted. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.* In reviewing the Complaint, the court accepts the factual allegations as accurate, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient.

Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

### B. Factual Allegations

Plaintiff alleges constitutional violations at Graham Correctional Center ("Graham") against the following Defendants: Physician Assistant Timothy Adesanya, Nurse Practitioner Amanda Hildebrand, Unit Administrator Stephanie Howard, Medical Director R. Matticks, Nurse Josh Morowitz, and Wexford Health Sources, Inc. ("Wexford"). (Doc. 1 at 7-8.)

On July 27, 2022, Plaintiff was seen by Defendant Adesanya regarding a "knot" on his left elbow, which was painful and hot to the touch. (*Id*. at 9.) Adesanya diagnosed Plaintiff with Methicillin-resistant Staphylococcus aureus. Adesanya advised Plaintiff to apply a warm compress to his elbow for three days and prescribed Bactrim and Tylenol.

Defendant Adesanya saw Plaintiff for his continued complaints of pain and swelling in his left elbow on three occasions in August 2022. (*Id*. at 9:20, 10:22, 11:29.) During the August examinations, Adesanya persisted in prescribing Bactrim and Tylenol despite Plaintiff's reports that the medication was ineffective in relieving his symptoms and pain. An x-ray of Plaintiff's left elbow was taken on August 26, 2022.

On August 31, 2022, a corrections officer informed Defendant Morowitz that Plaintiff was requesting medical care for his elbow. Morowitz responded that Plaintiff should sign-up for sick call.

On September 2, 2022, Defendant Hildebrand cut Plaintiff's left elbow to relieve the pressure and prescribed a different antibiotic. (*Id*. at 14:47.) Hildebrand then ordered Plaintiff to the Healthcare Unit for the next six days to change his dressing. Four days later, Plaintiff noted "a small decrease in swelling, heat, …redness" and "the presence of clear green drainage that was odorless." (*Id*. at 15:51.) Plaintiff told Hildebrand that he had limited mobility in his left elbow and felt deep, severe pain, which affected his daily activities. Hildebrand prescribed a third round of antibiotics and scheduled a follow-up appointment in three days, which did not occur.

On September 15, 2022, Plaintiff saw Defendant Adesanya regarding his left elbow. Plaintiff claims that Adesanya stated he was "tired of dealing with [Plaintiff]." (*Id*. at 16:63.) Plaintiff refused to sign paperwork authorizing medical care at Graham. Instead, Plaintiff requested an outside physician examine him to no avail. Plaintiff acknowledges that Adesanya attempted unsuccessfully to drain Plaintiff's elbow, which resulted in three stitches. Plaintiff asserts Adesanya "prescribed more inadequate antibiotics and pain medication." (*Id*. at 17:66.) Adesanya removed Plaintiff's stitches on September 22, 2022.

Plaintiff acknowledges that Defendant Hildebrand referred Plaintiff to an orthopaedic specialist. However, Defendant Adesanya told Plaintiff that he was not authorizing the referral and Plaintiff could see a specialist after his release from the Illinois Department of Corrections.

On September 26, 2022, Plaintiff filed an emergency grievance seeking outside medical care. Defendant Hildebrand examined Plaintiff and referred him to an

orthopaedic specialist, who determined that Plaintiff's infections had spread to his bone and bloodstream. A surgical procedure on Plaintiff's elbow was performed on October 5, 2022. After the surgery, Plaintiff received intravenous antibiotic treatments for six weeks.

Plaintiff claims that on several occasions, he spoke with Defendant Howard about the inadequate medical care he had received and asked her to investigate, but nothing occurred. Also, Plaintiff alleges that Defendant Matticks did not examine Plaintiff for his injury.

**C. Analysis**

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates 'deliberate indifference to serious medical needs of prisoners.'" *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To succeed on a claim of deliberate indifference to a serious medical need, a plaintiff must satisfy a test that contains both an objective and subjective component. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Under the objective element, a plaintiff must demonstrate that his medical condition is sufficiently severe. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Under the subjective component, the prison official must have acted with a "sufficiently culpable state of mind." *Id.* Thus, a plaintiff can establish deliberate indifference by showing that a defendant "knew of a substantial risk of harm to the inmate and disregarded the risk." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

"A medical professional acting in [her] professional capacity may be held to have

displayed deliberate indifference only if the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Rasho v. Elyea*, 856 F.3d 469, 476 (7th Cir. 2017) (quoting *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008) (internal quotation marks omitted)).

The Court concludes that Plaintiff's account is sufficient to state an Eighth Amendment deliberate indifference claim against Defendant Adesanya for the alleged medical care Adesanya provided for Plaintiff's left elbow. However, Plaintiff does not state a claim against the remaining Defendants.

A prisoner is "not entitled to dictate the terms of his care." *Harper v. Santos*, 847 F.3d 923, 927 (7th Cir. 2017). Nor does the Eighth Amendment require prisoners to receive complete access to health care. *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). "Rather, they are entitled to only 'adequate medical care.'" *Id.* (quoting Boyce v. Moore, 314 F.3d 884, 888–89 (7th Cir. 2002)). *See Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014) ("An MRI is simply a diagnostic tool, and the decision to forego diagnostic tests is 'a classic example of a matter for medical judgment.'") (quoting *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)).

Plaintiff's account does not demonstrate that Defendant Hildebrand knew of but disregarded a risk to Plaintiff's health. On the contrary, Hildebrand attempted to alleviate Plaintiff's pain by reducing the pressure on Plaintiff's elbow, ordering Plaintiff's return to monitor progress, and prescribing different medication. After the fourth day on the new antibiotic, Plaintiff noted improvement but complained about

limited mobility and pain. Hildebrand did not disregard Plaintiff's complaints but continued the antibiotic that had shown some positive effects. Furthermore, Hildebrand attempted to refer Plaintiff to a specialist, which by Plaintiff's account, was denied by Defendant Adesanya.

Plaintiff identifies Defendant Howard as Graham's Healthcare Administrator and not a licensed physician authorized to order medical treatments or overrule another physician's treatment decisions. In other words, as a non-medical defendant, Howard was entitled to rely on the medical decisions of Plaintiff's treating physicians. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (stating that wardens and grievance officers are "entitled to relegate to the prison's medical staff the provision of good medical care"). Thus, the Court concludes that Plaintiff fails to state a claim against Howard.

"For a defendant to be liable under section 1983, she must be personally responsible for the alleged deprivation of the plaintiff's constitutional rights." *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *see also Estate of Perry v. Wenzel*, 872 F.3d 439, 459 (7th Cir. 2017); *Aguilar v. Gaston-Camara*, 861 F.3d 626, 630 (7th Cir. 2017) ("[Section] 1983 does not establish a system of vicarious liability; a public employee's liability is premised on her own knowledge and actions, and therefore requires evidence that each defendant, through her own actions, violated the Constitution.").

Plaintiff acknowledges that Defendant Matticks did not examine him and does not allege facts that Matticks knew of Plaintiff's medical condition. Defendant Morowitz's alleged involvement concerned his response to a corrections officer's inquiry that if Plaintiff sought medical care, he should sign up for sick call. Neither

account show personal involvement in denying Plaintiff medical care for his injury. Therefore, the Court concludes that Plaintiff does not state a claim against Matticks or Morowitz.

Defendant Wexford can be held liable under § 1983 if an unconstitutional act is caused by: "(1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cty Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010); *see also Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927-28 (7th Cir. 2004) (stating that the standard for municipal liability in *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), applies to corporations as well). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby [clarify] that municipal liability is limited to action for which the municipality is … responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphases in original).

Plaintiff does not state a claim against Wexford as he does not allege a Wexford policy was the direct cause or moving force behind any constitutional violation. *See Hahn v. Walsh*, 762 F.3d 617, 640 (7th Cir. 2014) ("The plaintiff . . . must establish a causal link between the corporation's policy (or lack of policy) and the plaintiff's injury."); *Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012) ("To establish municipal liability, a plaintiff must show the existence of an 'official policy' or other governmental custom that not only causes but is the 'moving force' behind the deprivation of constitutional rights.") (quoting *Estate of Sims v. County of Bureau*, 506 F.3d 509, 514 (7th

Cir. 2007)).

## II. Motion for Counsel

Plaintiff seeks the Court's assistance in recruiting counsel. Plaintiff has no constitutional right to counsel, and the Court cannot require an attorney to accept a pro bono appointment in a civil case. The most the Court can do is ask for volunteer counsel. *See Jackson v. County of McLean*, 953 F.2d 1070, 1071 (7th Cir. 1992) (holding that although indigent civil litigants have no constitutional right to counsel, a district court may, in its discretion, request counsel to represent indigent civil litigants in certain circumstances).

In considering Plaintiff's Motion for Counsel, the Court must ask two questions: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and[,] if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

Plaintiff appends one letter he received in response to his solicitations for legal representation that the Court concludes is insufficient to demonstrate that he made a reasonable attempt to obtain counsel. (4-1 at 1.) Accordingly, the Court denies Plaintiff's Motion for Counsel.

**IT IS THEREFORE ORDERED:**

1) **The Court DENIES Plaintiff's Motion for Counsel (Doc. 4.)**

2) **Based on the merit review of Plaintiff's Amended Complaint under 28 U.S.C. § 1915A, the Court finds that Plaintiff's alleged facts are sufficient to state an Eighth Amendment deliberate indifference claim against Defendant Timothy**

      **Adesanya. Plaintiff's claims against Adesanya proceed in his individual capacity only. Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or under Federal Rule of Civil Procedure 15.**

3) **The Court DIRECTS the Clerk of the Court ("Clerk") to terminate Amanda Hildebrand, Stephanie Howard, R. Matticks, Josh Morowitz, and Wexford as Defendants.**

4) **This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendant before filing any motions to give Defendant notice and an opportunity to respond to those motions. Motions filed before Defendant's counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.**

5) **The Court will attempt service on Defendant by mailing a waiver of service. Defendant has sixty days from service to file an Answer. If Defendant has not filed Answers or appeared through counsel within ninety days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendant has been served, the Court will enter an order setting discovery and dispositive motion deadlines.**

6) **If Defendant no longer works at the address Plaintiff provided, the entity for whom Defendant worked while at that address shall submit to the Clerk Defendant's current work address or, if not known, Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.**

7) **Defendant shall file an Answer within sixty days of the date the Clerk sends the waiver of service. A motion to dismiss is not an Answer. The Answer should include all defenses appropriate under the Federal Rules. The Answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an Answer sets forth Defendant's position. The Court does not rule on the merits of those positions unless and until Defendant files a motion. Therefore, no response to the Answer is necessary or will be considered.**

8) **This District uses electronic filing, which means that after Defendant's counsel has filed an appearance, Defendant's counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendant's counsel copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are**

not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendant's counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendant's counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

9) The Court grants Defendant's counsel leave to depose Plaintiff at his place of confinement. Defendant's counsel shall arrange the time for the deposition.

10) Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in the dismissal of this lawsuit with prejudice.

11) If Defendant fails to sign and return a waiver of service to the Clerk within thirty days after the release is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on Defendant. Formal service will require Defendant to pay the associated costs under Federal Rule of Civil Procedure 4(d)(2).

12) The Court directs the Clerk to enter the standard qualified protective order under the Health Insurance Portability and Accountability Act.

13) The Court directs the Clerk to attempt service on Defendant under the standard procedures.

Entered: July 5, 2023.

s/ *Colleen R. Lawless*
_____
COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE